UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                         Bky No. 24-30331 WJF
                                                                          Chapter 13
Patrick James Anderson,
        Debtor.

---

Red Rock Bank,                                                 Adv. No. _____

        Plaintiff,

vs.

Patrick James Anderson,
        Defendant.

---

## ADVERSARY COMPLAINT

Red Rock Bank (the "**Bank**"), by and through its undersigned attorneys, as and for its complaint against Patrick James Anderson ("**Anderson**" or "**Debtor**"), states and alleges as follows:

### PARTIES

1. Plaintiff Red Rock Bank is a Minnesota banking corporation with an office germane to these proceedings located in the State of Minnesota, County of Redwood, at 100 S. Main Street, Sanborn, MN 56083.

2. Defendant Patrick James Anderson is an individual and resident of the State of Minnesota, County of Brown, at 14 South Spring Avenue, Springfield, MN 56087.

## JURISDICTION AND VENUE

3. This adversary proceeding is brought pursuant to Bankruptcy Rule 7001 and arises under 11 U.S.C. § 523. This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 7001(4) and 7001(6), and Local Rule 7004.

4. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

5. Venue is appropriate in this jurisdiction pursuant to 28 U.S.C. § 1409.

6. The Bank consents to entry of final orders or judgment by this court.

## GENERAL FACTUAL BACKGROUND

7. The Bank extended credit to Debtor on at least eleven occasions between October 2020 and October 2023 (the "**Notes**").

8. Debtor executed and delivered the following loan documents to the Bank:

   a. Promissory Note #3134 dated 10-29-2020, in the original principal amount of $60,894.72; Change of Terms Agreement dated 11-28-2023,

   b. Promissory Note #3171 dated 05-06-2021, in the original principal amount of $112,429.20;

   c. Promissory Note #3232 dated 03-16-2022, in the original principal amount of $36,150.00;

   d. Promissory Note #3238 dated 03-21-2022, in the original principal amount of $20,903.76;

   e. Promissory Note #3259 dated 09-30-2022, in the original principal amount of $38,150.00 and Change of Terms Agreement dated 09-29-2023;

f.  Promissory Note #3263 dated 11-10-2022, in the original principal amount of $13,190.00, Change of Terms Agreement dated 11-10-2023;

g.  Promissory Note #3264 dated 11-21-2022, in the original principal amount of $66,681.68;

h.  Promissory Note #3274 dated 01-12-2023, in the original principal amount of $10,150.00;

i.  Promissory Note #3281 dated 01-31-2023, in the original principal amount of $30,150.00;

j.  Promissory Note #3295 dated 04-17-2023, in the original principal amount of $33,650.00; and

k.  Promissory Note #3311 dated 10-02-2023, in the original principal amount of $10,150.00.

(Ex. A–K.)

9. Each of those eleven loans is currently outstanding.

10. As of the date Debtor filed his voluntary petition for Chapter 13 bankruptcy, February 7, 2024, he owed the Bank approximately $437,454.42 (the "**Indebtedness**"). (*See* Proof of Claim, filed April 15, 2024 in Bky No. 24-30331, as Claim 4.)

11. The Bank is a secured creditor with a blanket security interest in all personal property of the Debtor. (Ex. L–V.)

12. The Bank perfected its security interest, as evidenced by lien cards for vehicles and UCC-1 filings. (Ex. W–CC.)

13. To induce the Bank to extend credit, Debtor provided the Bank with balance sheets and other information regarding assets Debtor claimed to own. (Ex. DD, EE.)

14. In a balance sheet dated February 17, 2022, Debtor warranted and represented that he owned the following assets:

    a. 25 Cows valued at $2,000 per head;
    b. 2021 New Holland 460 Roll Belt Round Baler valued at $40,000;
    c. 1993 20' Livestock Trailer valued at $3,000;
    d. Flatbed Trailer valued at $2,500;
    e. Bale Spear valued at $650; and
    f. Calves.

(Ex. DD.)

15. In a balance sheet dated November 10, 2022, Debtor warranted and represented that he owned the following assets:

    a. Calves valued at $25,000
    b. Breeding Livestock valued at $50,000;
    c. Working Chute valued at $15,000;
    d. Skid Loader valued at $8,000;
    e. Bale Spear valued at $650;
    f. Livestock Waterers valued at $1,600;
    g. Feed Wagon valued at $4,000;
    h. Hay Rake valued at $1,200;
    i. Grapple valued at $2,000;
    j. Livestock Trailer valued at $3,000;
    k. Flatbed Trailer valued at $5,000;
    l. New Holland RB 460 Round Baler valued at $28,500; and
    m. New Holland 313 RDB Mower valued at $18,500.

(Ex. EE.)

16. The Bank reasonably relied upon the balance sheets when it extended credit under the following Promissory Notes: Promissory Note #3232, Promissory Note #3238, Promissory Note #3259; Promissory Note #3263; Promissory Note #3264; Promissory Note #3274; Promissory Note #3281; Promissory Note #3295; and Promissory Note #3311.

(Ex. C–K.)

17. Upon information and belief, in 2018 Debtor sold the following assets:

    a. Cows;
    b. Calves;
    c. Working Chute;

  d. Skid Loader;
  e. Bale Spear;
  f. Livestock Waterers;
  g. Feed Wagon;
  h. Hay Rake;
  i. Grapple;
  j. Livestock Trailer; and
  k. Flatbed Trailer.

(Ex. FF, 19:15–25, 21:1–23:8.)

  18. Upon information and belief, Debtor sold a Vermeer 605K round baler without obtaining a release of the Bank's security interest, in violation of the Commercial Security Agreements.

  19. The balance sheets and other information regarding assets Debtor claimed to own which Debtor furnished to the Bank contained materially false statements, specifically, Debtor represented to the Bank that he owned assets which he did not.

  20. Under the Notes (Ex. A–K), Debtor promised to provide the Bank "accurate, correct and complete financial statements or information . . . ."

  21. Under the Commercial Security Agreements (Ex. L–V), Debtor warranted and represented that he "own[ed] all of the property" in which the Bank took a security interest.

  22. Under the Commercial Security Agreements (Ex. L–V), Debtor was prohibited from selling, offering to sell, licensing, leasing, or otherwise transferring or encumbering property in which the Bank had a security interest without the Bank's written consent.

  23. At the Debtor's 11 U.S.C. § 341(a) first meeting of creditors in Bky No. 24-30331 (the "**341(a)**"), Debtor admitted, under oath, to selling personal property that was collateral for the Notes without providing notice to the Bank. (Ex. FF, 19:7–12, 21:10–19, 26:25–9.) Such sales were made without the Bank's written consent, as required by the Commercial Security Agreements.

24. At the 341(a) meeting, Debtor further admitted to providing falsified financial information to the Bank which included collateral that had been sold, for the purpose of receiving additional credit. (Ex. FF, 23:16–24:6, 24:24–26:15.)

## COUNT I
## 11 U.S.C. § 523(a)(2)(B)

25. The Bank restates the allegations set forth above, as though fully set forth herein.

26. Debtor wrongfully obtained extensions, renewals, and refinancing of credit by use of written financial statements respecting the Debtor's financial condition that were materially false.

27. The Bank reasonably relied on the false written financial statements Debtor provided.

28. Debtor created false written financial statements with intent to deceive the Bank.

29. Debtor created false written financial statements with the intent that the Bank would rely thereon to extend Debtor credit.

30. As a result of Debtor's actions, the debt due and owing to the Bank on the Notes is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

## COUNT II
## 11 U.S.C. § 523(a)(4)

31. The Bank restates and alleges the allegations set forth above, as though fully set forth herein.

32. Debtor falsely represented to the Bank that he owned assets which he did not.

33. Debtor knew his representations to be false.

34. Debtor knew that he needed to provide the Bank with accurate information regarding his assets.

35. Debtor concealed from the Bank the fact that he had sold assets, including collateral for the Notes.

36. Debtor knew that the Bank needed to be informed of sales of its collateral.

37. Debtor knowingly concealed information regarding the sale of assets, including collateral, from the Bank.

38. Debtor made his misrepresentations and failed to disclose the sales intending to cause the Bank to rely thereon in extending and maintaining credit.

39. The Bank reasonably relied on the Debtor's representations and non-disclosures in extending, renewing and maintaining credit to Debtor.

40. If the Bank had known the truth regarding Debtor's ownership of and sale of collateral, it would not have extended or maintained credit to the Debtor, or would have extended or maintained credit to the Debtor on different terms.

41. The Bank suffered pecuniary damage as a result of its reliance on the Debtor's representations and non-disclosures.

42. As a result of the Debtor's actions, the debt due and owing to the Bank on the Notes is not dischargeable under 11 U.S.C. § 523(a)(4).

### COUNT III
### 11 U.S.C. § 523(a)(6)

43. The Bank restates and realleges the foregoing as if restated fully herein.

44. Debtor breached his contracts with the Bank by failing to repay the money the Bank loaned to him and fraudulently representing, concealing, and misrepresenting his ownership and treatment of the Bank's collateral.

45. Debtor knew, or should have known, that fraudulently representing, concealing, and misrepresenting his ownership and treatment of the Bank's collateral would harm the Bank.

46. Debtor, by fraudulently representing, concealing, and misrepresenting his ownership and treatment of the Bank's collateral, deprived the Bank of its security and of the benefit of the bargain the Bank struck with the Debtor.

47. Debtor's fraudulent representation, concealment, and misrepresentation of his ownership and treatment of the Bank's collateral was substantially certain to cause the Bank harm.

48. Debtor's fraudulent representation, concealment, and misrepresentation of his ownership and treatment of the Bank's collateral was directed at the Bank.

49. Upon information and belief Debtor intended that the Bank would be harmed by his fraudulent representation, concealment, and misrepresentation of his ownership and treatment of the Bank's collateral.

50. As a result of the Debtor's willful and malicious actions causing injury to the Bank, the debt due and owing to the Bank on the Notes is not dischargeable under 11 U.S.C. § 523(a)(6).

WHEREFORE, Red Rock Bank prays for an Order of this Court:

a. Determining that Debtor's obligations to the Bank are not dischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (4), and (6);

b. Entering judgment against Debtor for the non-dischargeable debt, in the amount of $437,454.42, plus interest and fees accruing after February 7, 2024, and attorneys' fees and costs recoverable under the terms of the Notes;

c. Awarding the Bank its costs, disbursements, and attorneys' fees incurred in connection with this matter to the extent that the same are not recoverable under the Notes; and

    d.       Granting such other relief as the Court deems just and equitable.

Dated this 13th day of May, 2024.

*/s/ Jennifer G. Lurken*
Jennifer G. Lurken   #347516
Adam N. Froehlich   #0504545
GISLASON & HUNTER LLP
Eide Bailly Center, Suite 500
111 South 2nd Street
Mankato, MN  56001
Phone:  507-387-1115
Fax:  507-387-4413
jlurken@gislason.com
afroehlich@gislason.com

*Attorneys for Red Rock Bank*

## **VERIFICATION**

STATE OF MINNESOTA )
                              ) ss.
COUNTY OF BROWN )

I Christopher Lee, the Market President of Red Rock Bank, named in the foregoing Adversary Complaint, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Executed on: 5-10-2024

_____
Christopher Lee